Collins v. Pond Creek Mining Company and Mr. Staton, I am pleased to hear from you. Members of the Court, Mr. Snyder, Mr. Rapallo, may it please the Court, I am here today on behalf of Nora Collins, the widow of Johnny Collins, who is seeking federal black loan benefits due to the death of her husband because of black loan. In 2006, this Court remanded this case for the Benefits Review Board to assess whether the Administrative Law Judge's ruling as to whether Mr. Collins' death was caused by his pneumoconiosis meets the rigorous standards set forth by this Court in Scott v. Mason Coal Company. In this case in 2006, this Court noted that under the rigorous standards of Scott, the Administrative Law Judge could only give weight to the causation opinions of physicians who had not diagnosed pneumoconiosis if he provided specific and persuasive reasons for doing so, and those opinions could carry little weight at the most. However, this Court went on to state that even if he did give those opinions little weight, those opinions could not suffice as substantial evidence to support the Administrative Law Judge's decision that pneumoconiosis is not a contributing cause, especially when there is another opinion, even if poorly documented, which links the pneumoconiosis to the death. Therefore, since the opinions of the physicians in this case who did not diagnose pneumoconiosis cannot constitute substantial evidence that Mr. Collins' death was not contributed to by his pneumoconiosis, the question before us today is whether there is an opinion in this record, even if poorly reasoned, which links Mr. Collins' death to his pneumoconiosis. The claimant would submit that not only is there just one opinion, there are four opinions which properly link Mr. Collins' death to his pneumoconiosis, those being the opinions of Mr. Collins' treating pulmonologist, Dr. Yunus, the Department of Labor's reviewing pulmonologist, Dr. Gaziano, and two of the employers' reviewing pulmonologists, Drs. Morgan and Jarbo. How do you say that the two employer doctors support your proposition? Because when this court entered its opinion in 2006, it held that the employer was collaterally estopped from stating that the minor COPD was not pneumoconiosis. So while Dr. Morgan and Dr. Jarbo stated that the COPD was due to smoking, not pneumoconiosis, the employer is foreclosed from saying that those diagnoses were not pneumoconiosis. Therefore, since the law of the case is that COPD was pneumoconiosis, their opinions are necessarily that the minor did have pneumoconiosis. So you're applying the mandate in the previous case to their opinion. That's correct, Your Honor. And it can only come out your way, you say? That's the way I see it, Your Honor. Dr. Morgan reviewed all of the medical evidence of record, and he stated that there is clear-cut evidence that Mr. Collins had very severe hyposemia as a consequence of his COPD. Dr. Morgan went on to state that it is well recognized that hyposemia makes a person more prone to arrhythmias and makes the arrhythmias more difficult to treat. Dr. Morgan stated that Mr. Collins' death was the consequence of an arrhythmia. Therefore, I would submit that Dr. Morgan's opinion is well documented and well reasoned that Mr. Collins' COPD, which this Court, by its mandate in 2006, ruled to be pneumoconiosis, hastened Mr. Collins' death. Therefore, since Dr. Morgan's opinion properly links Mr. Collins' death to his pneumoconiosis, the company makes the argument that Mr. Gaziano's arrhythmias are the cause of his death. Mr. Gaziano's opinion was relatively worthless because it was just a half-page, and Dr. Younes really offered no explanation of how the minor's pulmonary trouble contributed to his death, and I just wondered what you would say about that. If you go by what the judge ruled as far as the application of this Court's decision, Bill Branch, he stated that Dr. Younes and Dr. Gaziano provided no explanation for their opinions, which is basically what the employer argues. But what this Court said, and Bill Branch is at an autopsy report and a death certificate, without further explanation or further supplementation or explanation, even without considering Dr. Younes' opinion, since we have the opinions from Dr. Younes. You're saying there were medical documents and tests and everything that were appended to those explanations? Well, his treatment records are off record, but first of all, I would point out the opinions of Drs. Morgan and Jarbo do supply the necessary supplementation or explanation, but I do believe that Dr. Younes' opinion is well-documented and well-reasoned, because he did prepare a very short medical report stating that pneumoconiosis contributed to the death, but when you look at the record, he treated Mr. He was his treating physician for what, three or four years? Right. Dr. Younes is board-certified in pulmonary diseases, so he's well-qualified. You saw him 19 times during that almost three years in his office, as well as seeing him various times in the hospital. He reviewed chest X-rays, pulmonary function studies, arterial blood gas studies, and an echocardiogram, so he obviously had sufficient data upon which to base his decision, so it's my opinion that Dr. Younes' opinion goes beyond what this court set forth in Bill Branch and is a well-documented and well-reasoned opinion. We generally accord a great deal of deference to the finder of fact, and here you have what seems like a factual question on whether the pneumoconiosis was a substantial contributing cause, and what is your chief complaint about the ALJ's opinion here? Well, first of all, if you look at Dr. Morgan and Dr. Jarboe's opinions, the judge said that their diagnosis was not a diagnosis of pneumoconiosis, but as I've already stated by virtue of this court's mandate, it is now the law of the case. It's already decided, Dr. Brush. Right, it's already pneumoconiosis, and they said that that pneumoconiosis contributed to his death, so the employer's positions alone They just thought it was caused by smoking. Right, right. But they agreed he had it, and it was contributing to the death. Right, right. And then, as far as Dr. Younes and Dr. Gaziano, he stated that Bill Branch says that their opinions do not suffice, but as I've stated, I believe that Dr. Younes and Dr. Gaziano's opinions go beyond Bill Branch, because we have the numerous records from Dr. Younes, who, as I've stated, was a board-certified pulmonologist, and we also have the records from Dr. Gaziano, who was the Department of Labor's reviewing pulmonologist. The judge said he couldn't tell what Dr. Gaziano reviewed, but if you look at the file, Dr. Gaziano said he looked at the case file. The case file, at the time Dr. Gaziano looked at it, included the application, the work history, the almost three years of treatment records from Dr. Younes, the hospitalization records from 1996 to 1997, as well as records from Dr. Meehan. When the ALJ said, well, this was cigar smoking and cardiac difficulties that led to his death, I always thought that heart and lung difficulties were intimately related. I mean, I'm not of nowhere close to being a physician, but I just thought it was almost a basic principle in medicine that if you have a respiratory ailment, it's going to lead to cardiac malfunction, and vice versa, but particularly a respiratory ailment. A respiratory problem is not going to supply the heart with the blood and the oxygen and everything it needs to function effectively, so I guess your point is you can't just wall these two off and say that medically they don't impact one another. Well, I think when you look at the judge's decision, he said that it was a respiratory death, and then when you look at the opinions from Drs. Younes, Morgan, Jarbo, and Gaziano, all of them said that he died of a cardiac arrest, which had been caused by his respiratory failure. So I think you're correct, the heart and the lungs worked together, and as a result of the respiratory insufficiency, his heart was starved of oxygen and quit. The fact that the immediate cause of death may have been a cardiac failure, in your view, would not rule out the fact that the respiratory difficulty and pneumoconiosis played a substantial contributing role. Right. The question is whether the death was hastened by pneumoconiosis, not whether there was just one cause of the death, and in this case, obviously the respiratory insufficiency hastened the death. Is hastening the P word in it? That is correct in this Court's decision. Cedar Coal Company, the question is whether the death was hastened, not whether it was the major... Where did you get that hastened? Is that a... That's out of this Court's decision. And Chef v. Cedar Coal Company, I can get the site for you if you like. It's in our briefs. But Chef, S-H-U-F-F. And it might have been a precedent if pneumoconiosis hastened someone's death, and it is a hastened a substantial contributing cause if it causes you to die sooner rather than later. Right. That's correct, Your Honor. And whether pneumoconiosis that was here was caused by coal mining? That's correct, Your Honor. He cited that last time around. Almost 36 years of work. But he had, what, 30-some years in the underground mines? Right.  All right. We thank you, sir. Thank you, Your Honor. Ms. Snyder? I believe it's a pull-up. It's 25. I have you as coming up second, and then I have Ms. Ropel. Are we in rebuttal? Am I correct? Is that correct? Sorry. I misunderstood, sir. Yeah. May it please the Court. I'm Kathy Snyder on behalf of Pond Creek Coal Company. Before going into the specifics of the arguments that Mr. Staten just discussed, I just want to point out that there's one procedural aspect of this case that's very important this morning when we consider all of the arguments. The judge here was in a situation where all of the medical evidence in this case was developed 14 to 17 years ago. So when he looked at this evidence in 2012, he had to apply the law that exists today to evidence that was developed many years ago. There has been progression in not only the medical science since that time. Where did Mr. Collins die? He died in 1997. She filed her claim that same year. Is his surviving spouse, his widow, still living? Yes, sir. And she has continued to exercise her appellate rights, and we have gone through the process. And now that the judge had to look at this in 2012 and apply... Eight years ago, or something. 2006 was the first decision by this court. It's hard to believe that somebody who has been ruled by this court as having pneumoconiosis and has spent 36 years working in the mines, and I gather most of that was underground. It wasn't just an office job. And we've held he was fully disabled by pneumoconiosis. How could it not be a substantial contributing cause to his death? I mean, you know that respiratory failures affect cardiac functioning. The way the judge described it here, there are three elements that have to be decided in any survivor's claim. The first two are whether he has pneumoconiosis and whether that pneumoconiosis is related to coal dust. And this court had already decided those two factors in 2006. The third element, though, is whether or not the death is a substantially contributing cause, the pneumoconiosis, to that death. And in order to prove that it's a substantially contributing cause, there are five ways to do that in the regulation. And the way that applies here is that fifth element, which is whether it hastens death. And that's what the judge was having to decide based on the evidence that was in the record. There has to be some decision medically that says this was a hastening factor here, that it somehow weakened his lungs or put him in a situation where he would not have died at the same time just due to his cardiac problems. Well, what about the opinions of Dr. Morgan and Jarbo? I mean, you go after Dr. Eunice and Gaziano as being too conclusory, but those weren't the only opinions here. You have Dr. Morgan and Jarbo supporting that, one of whom. And one of Eunice is actually, as Judge King pointed out, his treating physician had treated him for a period of three years. If you combine those four physicians together, plus 36 years in the minds, plus a prior court finding that he was disabled, fully disabled by virtue of pneumoconiosis, doesn't the petitioner have a pretty strong case? No, sir, because what happened here is the judge applied the case law, as this court instructed him to do in 2006, and discredited essentially every opinion in the record based on the current case law. He said under the Scott decision and under the Toler decision, he could not credit any of the employer's doctors because they didn't even find disease. So this court held if they don't find disease, then they can't be credited as to disability or death causation unless there's a very specific persuasive reasons to do so. And even then, they can only be given little weight. So he basically threw out all of the employer's doctors. That left him with Dr. Gaziano and Dr. Eunice's opinion. He found that both of those under this court's decision in Bill Branch were conclusory. They were bald conclusions because they stated pneumoconiosis contributed to death, and that was it. They didn't explain it. They didn't give any mechanism, and the director concedes at page 30 of their brief that neither of those opinions contained that explanation of why pneumoconiosis caused it. What about Dr. Morgan? Dr. Morgan's opinion cannot be credited on the issue of death causation because not only did he not find disease, he explained that death was in no way related to cardiac or to co-worker's pneumoconiosis. He attributed the minor's death entirely to cardiac problems. On page 360 of the joint appendix, he gives this analysis that the minor died due to cardiac arrhythmia, which is an irregular heartbeat. And that arrhythmia was made worse and made harder to treat by the fact that he had hypoxemia, which is a low oxygen level in the blood. So he said that this man's cardiac condition would have caused his death at the same time, in the same manner, had he never been a coal miner. So essentially, he's saying that it was attributable entirely to cardiac function. Now, he does say in the report that there is some component, some aspect of it, that the hypoxemia was in some way attributable to the chronic obstructive pulmonary disease, which this court held in 2006 by collateral estoppel is related to coal dust exposure. But what the claimant and the director are asking you to do is take that legal conclusion and use it to change Dr. Morgan and Dr. Jarbo's opinion to say something that they didn't say. They did not attribute this minor's death in any way to coal mine dust exposure. So their opinions cannot be basis of a finding of death due to coal dust exposure. That's not what they said. There would not be substantial evidence in the record to support that decision or to credit those two doctors. In fact, the claimant was here in 2006 arguing that those two doctors should be discredited and that the judge was wrong in crediting them. Now we're back here six, seven years later, and he's arguing they should be credited. Basically, here is the situation where the judge did exactly what this court told him to do. They said, go back and look at these. You can't credit those doctors' opinions if they didn't find disease, unless you have very specific persuasive reasons to do so. He didn't find any. He gave Dr. Morgan's and Dr. Zaldivar's opinion, he said, could be entitled to little weight. But he really says on page 776- When the court said they were entitled to no weight, did that deal with a different element of the case that didn't deal with the causation element? Right. They said, well, it does. No, it did deal with the death causation element. What this court held in Collins in 2006 was that the judge had mistakenly decided to credit those opinions even though they found that the man didn't have disease. So the fact that Drs. Morgan and Dr. Jarbo said that he didn't have any condition-related coal mine dust exposure- They said he had, Dr. Morgan said he had COPD, is what he called it. Yes, and by operation then of collateral estoppel, this court didn't say that any of those opinions were well-reasoned or well-documented. What they said was, you have to go back and reweigh that evidence, given our decisions in Scott and Toler. And that's what the judge did. And as you stated, Judge Wilkinson, we give extreme deference here to the findings of fact of the ALJ. He went through a very detailed analysis here and gave specific rational reasons as to why he discredited every doctor. Basically, based on today's standard- Is it possible that Drs. Morgan and Jarbo should be credited in view of the fact that their earlier opinion found that he was totally disabled due to pneumocardiac? No, because disability is not a factor in a death claim. Only death causation. So the fact that he was found to be, and the judge admits he had a respiratory impairment, significant respiratory impairment before he died, that he had COPD, which is attributable by collateral estoppel in part to coal dust exposure. But as he explained, every respiratory death is not necessarily related to the coal mine dust exposure. There has to be some well-reasoned or well-documented medical opinion- He just disagreed with what caused the COPD. Correct. He said the COPD was due to the 40-year past year of smoking history. Of smoking. Didn't have anything to do with 36 years in the coal mine. And that's exactly my point. But he tied it to his death. He did. And so did Dr. Jarbo. Both of them said that, in part, COPD- He disagreed with the cause, which has already been resolved in the prior case, but they agree that they support the proposition that it hastened his death. But then you would be using two doctors who said the miner's death was, not only did he not have the disease, but he didn't die as a result of it. And you're taking a legal conclusion and you're replacing it for what those doctors actually found. You're correcting those- His lung problem hastened his death. They just simply disagreed as to what caused the lung problem. Which is the only element still in litigation. Whether it was hastened his death or not. They agreed it hastened his death. They agree it hastened his death. They disagreed with what caused the lung problem. That's the way I see it. And I agree- I think that's what the other side was- I think that's what Mr. Slayton was arguing anyway, too. But anyway, I understand your position, I think. Our position basically is that the judge did exactly what he was supposed to do. He went back and reweighed the medical opinions under the court's case law in Scott and Mason and in Bill Branch. And he said this is the situation that mimics the Bill Branch. I can't credit Dr. Gazianas. I can't credit the treating physician, Dr. Yonez, because they simply didn't explain their decisions. They were not well documented. And even if you find that they were able to credit a poorly documented opinion, which seems to be what Scott's case indicated, they still, based on a long line of cases out of this court, have to be a reasoned medical decision. And he decided that neither one of them were and gave very specific reasons for his decision. Then he said that I can't say that the employer's doctors can now be used to support death causation when they didn't find that the minor died as a result of coal mine dust exposure. They found that it didn't matter. I want to just follow up on Judge King's point for a minute. If the earlier conclusion about what caused the lung problem resulted in a disagreement between pneumoconiosis and smoking, and if this court's earlier opinion said that it was pneumoconiosis that caused the lung problem, then Dr. Morgan is simply saying whatever caused the lung problem hastened this gentleman's doubt. And he goes into how respiratory conditions affect heart ailments and everything. So why wouldn't his opinion still be a valid opinion on the general proposition of whether the lung problem, as opposed to cardiac problem, contributed to the minor's death? Now, the phase of the case as to what caused the lung problem is over. And so it's a question of what contributed to his death. But on that particular point, Dr. Morgan's opinion is a pretty persuasive one, isn't it? Well, as both the judge and the Benefits Review Board said in this case, they wouldn't take the legal finding that the minor had pneumoconiosis and his chronic obstructive pulmonary disease was caused or contributed to by coal dust and use that to fix or correct Dr. Morgan's opinion into saying that that was cause of death. So they weren't going to take the legal decision on disability and on existence of the disease and use that to say, okay, then that means Dr. Morgan and Dr. Jarboe must believe or could support a finding of death causation here, when both those doctors said that it wasn't related in any way to coal mine dust exposure. We resolved that in 2006. Dr. Morgan, he was your expert. He wrote you that letter in January of 1999. And he said, well, it's not related to coal mine dust exposure. It's because he smoked too much. It wasn't because he worked in a coal mine for 36 years. He just smoked too much. And that was resolved in the first case. But he also said his lung problem, which he attributed to smoking, hastened his death, which is the only question we have here today, whether his lung problem, which has been determined in our prior decision in 2006 to be pneumoconiosis. Yes. That part's been determined. That has been determined. Did it hasten his death? Dr. Morgan says yes. Right on the money, on page 360. But this court also told you. Of the JA. Yes, it did. I'll read it. Let me ask you, there was a presumption that pneumoconiosis, we can presume that it was a death causation. That was the law by statute enacted in 2005. But was it the law when Mrs. Collins filed her claim? No, it was not, Your Honor. At the time this claim was filed in 1997, there was no presumption of death causation that would apply in this case. She had the burden to prove, by preponderance of the evidence, that the miner's death was hastened by pneumoconiosis. That's why Judge Lesniak, after he discredited Dr. Yones and Dr. Gaziano, her opinions that she had put forth, he could have stopped there because she had failed to sustain her burden of proof. In 2000, the regulations you're talking about, the statutory change in 2005, shifted that burden in some cases, such as this, to the employer. But that's not the case here. And he was, one other thing, as a matter of record here, he was determined to have black lung disease, pneumoconiosis, in 1988? Yes, and his living miner's claim. He got benefits from then, from that point, until his death in 1997. That's correct, and that's why the court deemed it collateral assault. And the widow filed her claim, and that's been litigated now 17 years. Yes, sir. That's correct. I see my time's about to be up. In conclusion, it's fine for exposition that the ALJ did what he was supposed to do, as the trier of fact, he explained his rationale, and that the court should defer, as the board did, to those findings, that they were well-reasoned, they were supported by substantial evidence in this record, as none of the physicians that we've been discussing here today, Dr. Morgan and Dr. Jarbo, found that co-workers' pneumoconiosis or colonoscopy exposure, or his employment as a miner, caused or contributed to his death, that the ALJ appropriately failed to credit those opinions. And we would ask that that decision be sustained. Thank you. We thank you. Ms. Rapolo, happy to hear from you. Good morning. My name is Rita Rapolo, and I represent the Director of the Office of Workers' Compensation Programs. The employer refuses to accept that the ALJ, in this case, made errors. The ALJ made three significant errors. The first is that the ALJ refused to accept, or even consider, that Dr. Morgan's opinion supports that the miner's COPD contributed to his death. Dr. Morgan explained how that happens, that COPD leads to hypoxemia, which is difficulty of getting the oxygen into the blood, and that in turn leads to arrhythmia, which Dr. Morgan said was the cause of the miner's death. Dr. Morgan proved to be actually very, and he also said, Dr. Morgan also said that having this COPD and the arrhythmia unfortunately affected how the heart condition can even be treated. And that we see from the hospital report in the month that the miner died. It's a cardiac consultation, and it specifically said that the hospital was not considering doing an aggressive cardiac workup because of the miner's end-stage pulmonary condition. So there is the explanation that the ALJ kept looking for. He was just looking in the wrong places. If we, just assuming argument, if we agree with you, would you favor a remand for the ALJ to consider, for example, Dr. Morgan's opinion, or would you favor, at this late date, an award of benefits? We would, I'm talking about what the, if we were to agree with you that there was error of the law, what do you, what? We would suggest a reverse on that being an award of benefits. Because actually the judge has made some findings that we can accept. I mean, in the end, the question is, was it the COPD that everybody accepts, or has to accept, was due to coal mine employment? Did that hasten, or not even hasten, did it contribute to the miner's death? And you have four doctors, Dr. Younes, Dr. Gaciano, Dr. Jabeau, and Dr. Morgan, saying that the COPD did contribute. But admittedly, there are four other employees' doctors who said, no, no, no, it was not the COPD, it was heart, just solely heart that caused. But I don't think we have to, and the ALJ did not consider, in terms of weighing these doctors against each other, but I think there's enough here that we could decide that the weight of the evidence shows that it was a combination. Let's assume that the ALJ erred in not considering Dr. Morgan's opinion in light of her earlier ruling, that Dr. Morgan's opinion as to a lung-heart causation was worthy to consider. One option would be to remand for proper consideration of Dr. Morgan's opinion. Another option would be to say in light of our earlier decision, in light of his extensive coal mining history, in light of the four physicians all taken together, and in light of the long and torturous history of this case, that the time had come for the case to be resolved and concluded and not simply on the subject of another remand. So just tell us straightforwardly how, in the director's view, we get to an award of benefits rather than simply another remand. That's important. I just can't go on forever. We get the award of benefits because it cannot be disputed that the miner had COPD as far back as 1988, that it was totally disabled at that time, and that it was due to coal mine employment. And things have not changed. The COPD did not improve. It got worse. It was so bad that they couldn't even do a proper heart treatment evaluation here. And there is an explanation of how that happened through Dr. Morgan. We have causation opinions, especially by Dr. Ewans, who's eminently qualified. He's a board-certified internist and pulmonologist, treated the miner for three years, said the miner was in and out of the hospital the last year, sometimes twice a month, because of his pulmonary condition. We have Dr. Morgan explaining how that works. We have a few doctors who say, no, it wasn't COPD that caused it, it was the heart. But the judge discredited them either because they were too generalized or they had assumptions contrary to the act. And also the judge thought that he was constrained by this court's decision in Branch that if there's no explanation, then any award has to be reversed. That's what happened in Branch. Completely different situation where the miner had pneumoconiosis, but there was no indication of, was it even a serious pneumoconiosis? Was there a totally disabled and respiratory condition? That's Branch. Here, there's no doubt there was a serious pulmonary condition. The judge was effectively... If the question is one of hastening, I mean, again, I don't have a lot of medical expertise, and I'm not an ALJ, and I haven't heard the evidence, but it doesn't add up to me that somebody is totally disabled due to pneumoconiosis and has spent 36 years on a mine, and I don't understand how it could not have contributed. I mean, it just doesn't compute with me. No, absolutely. It's just common knowledge raises, and which is also why for the judge to say that there was insufficient explanation. I mean, sometimes you don't need to connect. The doctor doesn't need to connect at all. Sometimes a judge can do it. When there's such a pulmonary condition as this miner had, how could it not have caused? And interestingly, the one thing, when some of the doctors said that it wasn't due to respiratory, it was due to cardiac. I mean, sometimes it's a good thing not to be an expert. Sometimes, though, it's just common sense. Yes, that's what I'm saying. And common sense here would argue. Sometimes, you know, I mean, experts have their place, but sometimes they get lost in the weeds. Yes. And sometimes it's a good thing to have somebody step back and say, how could this not have contributed? Sometimes doctors don't step back, and in this case, sometimes ALJs don't step back. Okay. Thank you. Let's see. I think we'll come down and greet counsel, and then we'll move directly into our next guest.
judges: J. Harvie Wilkinson III, Robert B. King, Henry F. Floyd